## DAVIS *v.* STATE.

### Opinion delivered December 7, 1914.

1. ASSAULT WITH INTENT TO KILL—MATTERS TO BE CONSIDERED BY JURY—EVIDENCE.—In a prosecution for assault with intent to kill, to warrant a conviction, the proof should show a specific intent to take life, and in determining whether or not such an intent existed the jury should take into consideration the manner of the assault, the nature of the weapon used, the manner in which it was used, statements of defendant, if any, and all other facts and circumstances tending to show the state of defendant's mind.

2. CRIMINAL LAW—CONFESSION—CORROBORATION—FELONY.—In a criminal prosecution, a confession, not made in open court will not warrant a conviction, unless there is other proof tending to show that the offense had been committed, and an instruction to that effect is essential, when, from statements attributed to defendant alone, a specific intent to commit crime might be inferred by the jury.

3. ASSAULT WITH INTENT TO KILL—SPECIFIC INTENT.—One of the essential ingredients of the offense of assault with intent to kill, is the specific intent to take life. The offense is not proved until such intent is proved.

4. ASSAULT WITH INTENT TO KILL—HOW PROVED—EVIDENCE—INTENT.—Intent to commit the crime of assault with intent to kill, can not, under Kirby's Digest, § 2385, be proved by the confession of the defendant, not made in open court, unless there is also other proof of such specific intent.

5. ASSAULT WITH INTENT TO KILL—DEADLY WEAPON—PRESUMPTION.—While a person is presumed to intend the natural and ordinary consequences of his acts, such presumption does not arise when the act fails of effect, or is attended by no consequences; and, when such act is charged to have been done with a specific intent, such intent must be proved, and can not be presumed from the act.

Appeal from Howard Circuit Court; *Jefferson T. Cowling*, Judge; reversed.

This is an appeal from a judgment of conviction for assault with intent to kill. The facts are substantially as follows:

The appellant had been fined in the justice court; she had failed to pay the fine and the deputy sheriff had a commitment for her. Her husband, Will Davis, had agreed to pay the fine, but failed to do so. When the deputy told appellant that her husband had refused to pay the fine appellant, who was then working at a hotel, left the deputy and went to her husband's house, the deputy following her. When the deputy reached the house he found the appellant and her husband, Davis, talking about the fine. She asked if he was going to pay it, and he said he would pay half of it. She then asked him what he was going to do about the $5 he was owing her on some cotton. They were standing on the back porch. Davis left her and the officer in the hall and went into his dining room. The next the officer saw of appellant she came in the room and again asked Davis if he was going to pay the fine, and he refused. Then she shot at him. He was sitting in a chair beside a table which was between him and appellant. The table was three or four feet high. His feet were on the floor, his body being all above the table. Appellant was seven or eight feet from her husband when she fired. The first shot took effect in Davis's leg. Davis then got up, grabbed a chair, started toward appellant and started to hit her with it. Appellant ran backward and fired rapidly. Appellant fired the first shot at Davis under the table. The shots were fired as fast as she could pull the trigger. The shots were fired in the direction of where Davis was sitting, except two, which were to the right.

There was also testimony on behalf of appellant, tending to show that after the first shot the shots were not in the direction of where Davis was sitting or where he said he was located.

A witness having appellant in charge a short time just after the shooting, testified as follows: "She says, 'He would not pay my fine. He got me into trouble and would not pay my fine and I will kill him. I would rather be dead if I knew that Will was dead.' "

The officer who had her in custody after the shooting, stated a conversation he had with her as follows: "I was talking to her in this way, I says: 'Willie, you have made an awful mistake,' and she says, 'How is that?' 'Well,' I says, 'The shooting you done. You had better went to jail and laid out this fine than to have gotten into a thing like this.' She says, 'I don't care, the only thing I regret about it is, that I don't know that I killed him.' "

Another witness testified that he heard appellant say, after the shooting, that she "meant to kill him, (Davis). Said all she hated about it was that she didn't kill him, and would use the gun again if she could get a chance."

The appellant testified, in part, as follows, describing the occurrence: "Mr. Whitten came in at the time; so he kept rushing me to come on to jail and it worried me so I couldn't get to talk to my husband and I just shot to see if I couldn't scare him, to see if he wouldn't pay it, so I wouldn't have to come to jail. I was standing in the door between the kitchen and the dining room, just inside the kitchen. He was sitting at the end of his trunk and the dining table was between me and him. His body was above the table. I shot to scare him. Just threw the gun down and turned my head off and fired, and after I shot the first time I just kept working my fingers, but I don't remember how many times the gun did shoot. I did not intend to kill him when I shot. I just shot to scare him, thinking it would frighten him into paying my fine. I didn't take any aim at him, didn't look at him at all. My only purpose was to frighten him into paying the fine for me."

She further stated that she had no recollection of making the statement that Mr. Whitten testified to. She denied talking to anybody else, and stated that she didn't recollect anything that she said while she was in the custody of the officer. On cross-examination, she stated that she held the

gun down low enough to shoot under the table, and didn't look at Davis when she shot.

The record shows that appellant tendered her plea of guilty to an aggravated assault, and the only issue submitted to the jury was as to whether or not appellant was guilty of an assault with intent to kill.

The court, at the instance of the State, correctly defined the offense of assault with intent to kill. Among other instructions, it gave the following:

"3. While it is necessary that the proof should show a specific intent to take life, in order to constitute the crime of assault with intent to kill, it is not necessary that this intent should be shown by direct and positive evidence, but it may be shown by facts and circumstances, and in determining whether such intent existed, you will take into consideration the manner of the assault, the nature of the weapon used, the manner in which it was used, her statements, if any, and all other facts and circumstances tending to show the state of her mind."

Among other prayers for instructions presented by the appellant, was the following:

"4. Although you may find from the evidence that the defendant admitted to the officers and others that she intended to kill Will Davis when she shot at him, still you can not convict her of assault with intent to kill on this confession, unless you further find it is accompanied with other proof that such offense was committed."

The court refused to grant this prayer, and appellant duly excepted and objected to the ruling of the court, and made this ruling one of the grounds of her motion for a new trial.

*W. P. Feazel*, for appellant.

1. The intent must be proven. This intent can not be inferred from proof of assault with a deadly weapon without provocation. 49 Ark. 156; 54 *Id.* 336.

2. Instruction 4, asked by defendant, should have been given. Kirby's Digest, § 2385.

*Wm. L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

1.  Instruction No. 3, for the State is the law.   No. 4 asked for by defendant was properly refused.

WOOD, J., (after stating the facts).   (1) The court correctly declared the law in the third prayer for instruction at the instance of the State, telling the jury that the proof should show a specific intent to take life, and that in determining whether or not such intent existed, the jury should "take into consideration the manner of the assault, the nature of the weapon used, the manner in which it was used, her statements, if any, and all other facts and circumstances tending to show the state of her mind."   But, in connection with this instruction, the court should have also granted appellant's prayer No. 4.   That prayer was a correct declaration of law, and, under the evidence, appellant was entitled to it.

Section 2385 of Kirby's Digest provides as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed."

(2)   After telling the jury, at the instance of the State, that they should take into consideration the statements of appellant in determining whether or not there existed in her mind a specific intent to take life at the time of the shooting, it was necessary to tell the jury that her confession, not made in open court, would not warrant a conviction unless there was other proof tending to show that the offense had been committed.   An instruction to this effect was essential, for otherwise the jury might have concluded from the testimony, under instruction No. 3, given on behalf of the State, that they were warranted in finding from appellant's statements or confessions alone that she had the specific intent to take the life of Davis at the time of the shooting.

(3)   Now, one of the essential ingredients of the offense of assault with intent to kill is the specific intent to take life.   The offense is not complete until such intent is proved.   See *Scott* v. *State,* 49 Ark. 156; *Chrisman* v. *State,* 54 Ark. 283; *Beavers* v. *State,* 54 Ark. 336.

(4)   This essential ingredient of the crime, under the plain language of the statute, can not be proved by the confession of the defendant not made in open court, unless there is also other proof of such specific intent.   In other words, under our statute, if there be no proof of the specific intent to take life except the extra-judicial confession of such intent, then the offense of an assault with intent to kill is not established, and if this were the only proof of such intent the accused would be entitled to an acquittal of that offense.   But, under the instruction given at the instance of the State in this case, the jury would have been warranted in finding that such specific intent existed from appellant's confession alone to that effect, without any other proof tending to show that such was her intent.   This is not the law and the appellant was entitled to her prayer for instruction No. 4, to prevent the jury from being misled by the State's prayer for instruction No. 3.   These two instructions taken together would have properly declared the law, and obviated any possible prejudice to the appellant.

To be sure, it could be plausibly argued that the appellant best knew what was going on in her own mind and what her intention was when she made the assault on Davis, and that her confession to the effect that it was her intention to kill him, even though extra-judicial, should be given great probative force; but still, under the statute, this of itself was not sufficient to prove that such was her intention.   The refusal of the court to grant appellant's prayer No. 4 was an error highly prejudicial to her, for in the absence of her confession it was an issue of fact as to whether or not there was evidence sufficient to show that the specific intent to take the life of Davis existed in the mind of the appellant at the time she assaulted him.   She testified, that such was not her intention, and the manner of the assault tended to corroborate her testimony.   The jury could have found from this testimony that there was no specific intent on the part of appellant to take the life of Davis, and hence that the offense charged had not been proved, except alone by the statements or extra-judicial confessions of appellant.

and, as we have already shown, this of itself was not sufficient.

(5) This is not a case where the intention to take life is presumed from the mere use of a deadly weapon. If the life of Davis had actually been taken by the assault, then an intent to kill from the use of the weapon would have been presumed, but such is not the case where the charge is only an assault with intent to kill. As was said in *Lacefield* v. *State*, 34 Ark. 275, quoted in *Chrisman* v. *State*, *supra*, "While it is true that a person is presumed to contemplate the ordinary and natural consequences of his acts, such presumption does not arise where the act fails of effect, or is attended by no consequences; and where such act is charged to have been done with a specific intent, such intent must be proved, and not presumed from the act." See also, *Beavers* v. *State*, *supra*; *Scott* v. *State*, *supra*.

For the error in refusing to grant appellant's prayer for instruction No. 4, the judgment is reversed and the cause remanded for a new trial, unless the Attorney General will within fifteen days elect to have the cause remanded with directions to fix the punishment and enter judgment against appellant for aggravated assault.

SMITH, J. dissents.