LEON SATTERFIELD *v.* STATE OF ARKANSAS

5481                                              451 S. W. 2d 730

Opinion delivered March 30, 1970

*Bon McCourtney & Associates;* By: *Troy L. Henry,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

LYLE BROWN, Justice. This case was before our court in *Satterfield* v. *State,* 245 Ark. 337, 432 S. W. 2d 472 (1968), wherein we reversed a conviction on a charge of arson. On retrial Satterfield received the same punishment as on the first trial. The action of the trial court in instructing the jury on the statutory minimum and maximum punishment; in permitting the introduction of a transcript of testimony of two witnesses taken at the first trial and who were not present for the second trial; and in allowing the case to be submitted to the jury—those are the points upon which appellant seeks reversal.

Appellant was convicted on the testimony of three young companions who testified as to remarks made by appellant which could be interpreted to mean that he

intended to burn the barn; they further testified that they were in the car with him when he drove to the farm and they saw the blaze originate after appellant made a trip to the barn; and that appellant returned later and watched the barn and its contents of dry hay burn. The owner testified that the barn was not wired for electricity and that the materials of which it was constructed were not combustible; and also that the portion in which the hay was stored was not boxed in. We will not further detail the testimony, referring interested parties to the facts set forth in the first opinion. Such other facts as are necessary to explicate this case will be detailed as we presently set out and discuss the three points for reversal.

Point I. *Appellant having received a one-year sentence at the first trial, it was error to submit to the jury a possible sentence exceeding one year.* The trial court instructed the jury that it could fix punishment at between one and ten years as provided by Ark. Stat. Ann. § 41-501 (Repl. 1964). Appellant objected and urged, on constitutional grounds, that when an accused obtains a reversal and new trial he cannot, on the second trial, receive a sentence greater than that fixed at the first trial. That same issue was raised in the recent case of *Fuller and Walton* v. *State,* (April 21, 1969), 439 S. W. 2d 801. (Certiorari denied November 17, 1969, 60 S. Ct. Reporter 260.) There we said:

> We hold that under the law of Arkansas a new trial granted in a criminal case for error committed in the first trial constitutes a new trial as to penalty imposed by the verdict, as well as to guilt or innocence where the verdict in the second trial is for the same degree of crime as the first verdict, and the penalty assessed by the second verdict is of the same nature and within the statutory limitations for the degree of the crime involved.

Appellant argues that *Fuller* has been overruled by the later case of *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), and *Simpson* v. *Rice,* consolidated with

*Pearce.* Pearce and Rice were sentenced after retrial in the States of North Carolina and Alabama, respectively. In those States the court sets the punishment after a verdict of guilty is returned by the jury. In the cited cases the court held, among other things, that the equal protection clause of the Fourteenth Amendment does not impose an absolute bar to a more severe sentence upon reconviction, nor does the double jeopardy clause of the Fifth Amendment impose such a bar. It was held that the due process clause requires that "vindictiveness against the defendant for having successfully attacked his first conviction play no part in the sentence he receives after a new trial." To insure against that motive a sentencing judge imposing a more severe sentence after the second trial must point up the factual data upon which the increased sentence is based.

For yet another reason appellant's Point I is without merit. That is because he received identical sentences in both trials, being the minimum punishment, hence there was no prejudice. *Shaddox* v. *State,* 244 Ark. 747, 427 S. W. 2d 198 (1968).

Point II. *A good faith effort was not made to obtain the presence of two witnesses who testified at the first trial; it was therefore error to permit the reading of their prior testimony to the jury in the second trial.*

Two State's witnesses, Jerry Turner and Larry Dunn, were reportedly out of the State on the date of the second trial. Over appellant's objection the court permitted the introduction of their testimony given at the first trial.

It has long been the rule in our State, as well as in many other jurisdictions, that the right of confrontation by a witness may be dispensed with when that witness is unavailable and has given testimony in a previous proceeding against the same defendant, provided the witness was subject to cross-examination in the first proceeding by that defendant. The most com-

mon excuse for the exception heretofore recognized has been the absence of the witness from the trial court's jurisdiction; regarding that excuse the Supreme Court recently made this pronouncement:

> Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. *Barber* v. *Page, Warden,* 390 U. S. 719 (1968).

In *Pointer* v. *Texas,* 380 U. S. 400 (1964), it was held that the right of confrontation granted by the Sixth Amendment is obligatory on the states through the Fourteenth Amendment.

Reverting to the holding in *Barber,* it was there held that a witness is not "unavailable" for the purpose of excusing the confrontation requirement "unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial." *Barber* also says the right to confrontation is basically a trial right and "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." See *Britton* v. *Maryland,* 298 F. Supp. 641 (1969).

We have combed the record in this case and have concluded that the efforts of the State to obtain the presence of witness Larry Dunn were far too feeble to constitute "good faith effort." Early in August 1969, a subpoena was issued for Dunn to appear in court on August 15, a pretrial date. (It seems to be the custom to subpoena all witnesses for the pretrial date, at which time the cases are set for a day certain and the witnesses then and there re-subpoenaed for the later date.) The sheriff was unable to subpoena Dunn because he could not find him in Fulton County. At pretrial the case was set for August 26. Four days after pretrial a subpoena was issued for Dunn for the trial

date. Again the sheriff was unable to locate Dunn, and upon inquiry learned that he was in Kentucky in attendance at a trade school. Upon ascertaining that Dunn was in another state, the sheriff, according to his own testimony, abandoned any further effort to obtain the witness. He testified that he did not inquire as to the particular town in Kentucky in which the school was located.

It is apparent from the circumstances that the State was put on notice before the pretrial date that Dunn was not in the jurisdiction; yet no effort was made to ascertain his whereabouts until a few days before the actual trial date. It was shown that Dunn's people lived in the county, and since he was attending school, as opposed to being on a transient trip, it is just as logical that his address in Kentucky could have been obtained by simple inquiry. In fact the State actually was in contact with the Dunn family because Pat Dunn, Larry's sister, was a witness for the State. Incidentally, she testified that Larry was not aware of the new trial. Also, and as a very practical matter, a telephone call to Dunn could have been fruitful in obtaining his presence even at the late date on which it was discovered he was in Kentucky. Finally, we would note that earlier discovery of Dunn's whereabouts would have made it practical to have instituted proceedings under Ark. Stat. Ann. § 43-2006 (Repl. 1964), being part of a uniform act for obtaining witnesses from without the State.

We point out a particular reason why Dunn's presence was important. On the first appeal we held that Dunn was a possible accomplice and that the jury should have been so instructed. That possible status made it particularly necessary that the jury be afforded the opportunity to observe his demeanor.

It must be remembered that the burden was on the State to justify its motion to read into evidence the testimony of the absent witness. The State failed to meet the burden and we must hold it to have been an

abuse of discretion to permit the introduction of Dunn's testimony.

Point III. *The evidence was as a matter of law insufficient to support the verdict.* The testimony was substantially the same as in the first trial. The facts on which the State relied are detailed in the majority and dissenting opinions on the first appeal. It would be pure repetition to here delineate the facts and circumstances already recited on the first appeal and would be of no value to our jurisprudence. Suffice it to say that we have carefully re-examined them for substantiality and hold the evidence to be legally sufficient to support the verdict.

For the error in permitting the reading of Dunn's testimony the case is reversed.