Ralph BUSSARD *v.* STATE of Arkansas

CR 89-87                                   778 S.W.2d 213

Supreme Court of Arkansas
Opinion delivered October 16, 1989

*Sullivan, Emmons & Kissee*, by: *Larry Dean Kissee*; and *Mark Johnson*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Bussard was previously convicted of capital murder. We reversed and remanded. *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988). He was tried a second time. Again he was convicted of capital murder. He again appeals. There is no merit in any of his five (5) points of appeal and, accordingly, we affirm.

## I.

Appellant first argues that the evidence was insufficient to convict him of capital murder. The essential facts are as follows. Arthur Garner and his wife, Florence, operated the Motorport Motel near Hardy. Mrs. Garner testified that on August 28, 1981, around 1:00 to 2:00 a.m., they were asleep in their bedroom, which was next to the motel office, when someone rang the office doorbell. Mr. Garner got up, put on his clothes, and picked up a pistol which was beside a cigar box containing petty cash. He went to a window and asked what was wanted. Mrs. Garner did not hear the response. Mr. Garner then opened the office door. Mrs. Garner heard a shuffling sound and someone whispered, "Shut up, shut up." Immediately thereafter, Mr. Garner was pushed off balance and fell against a chest of drawers back in the bedroom. Mrs. Garner started to get her purse which was on the foot of the bed. By this time Mr. Garner came over by the bed near Mrs. Garner. Someone ran into the bedroom and pointed something at them that looked like a pistol. Mrs. Garner was grabbed by the arm and pulled across the bed and then onto the floor. A man in the bedroom said, "Turn the light on, turn the light on."

Another, who was in the office, answered, "It won't go on."

Mr. Garner said, "You can have the money." There was one shot immediately followed by several shots, a pause, and one final shot. Mrs. Garner next heard the sound of people around the bed, people whose actions she described as, "looking for things," and someone said, "Let's get out of here." They left. Although she had been shot twice, Mrs. Garner called the police. They found Mr. Garner shot to death, lying face down in the doorway with a small handgun under his body. The cigar box containing petty cash was missing.

Early that morning Dorothy Hudson, the appellant's sister, received a call informing her that her brother had been shot. Later, her brother and two other men came to her home in Springfield, Missouri. One of the other men had been shot in the throat and her brother had wounds about his chest. She took her brother into her home. She later called an ambulance to have him taken to St. Johns Hospital in Springfield. At St. Johns, a bullet was removed from his back. That bullet was given to the police. A firearms examiner testified that the bullet had been fired from the handgun which was found underneath Mr. Garner.

■ A person commits capital murder if, alone or with others, he commits or attempts to commit robbery or burglary or other specified felonies, and in the course of one of those felonies, causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101.

■■ Here, the fact that Arthur Garner was shot to death is not in dispute. The evidence concerning the bullet which was removed from the appellant constituted substantial evidence of appellant's participation in the murder. One need not take an active part in a murder to be convicted of such if the accused accompanied the person or persons who actually committed the murder and assisted in such commission. *Hallman v. State*, 264 Ark. 900, 575 S.W.2d 688 (1979). The evidence concerning the missing cigar box containing petty cash was substantial evidence of the underlying felony of robbery. *See* Ark. Code Ann. § 5-12-102 (1987). The circumstantial evidence that the intruders entered the Garners' bedroom for the purpose of committing robbery is substantial evidence of the underlying felony of

burglary. *See* Ark. Code Ann. § 5-39-201 (1987). Thus, the evidence was sufficient to support the conviction for capital felony murder.

## II.

Appellant next argues that the trial court erred in admitting into evidence the prior recorded testimony of a witness. His argument sub-divides the point into two issues: (a) whether the State established the unavailability of the witness, and (b) whether the appellant was denied his Sixth Amendment right to confront the witness.

## II. (a)

Dorothy Hudson, the appellant's sister, testified for the State at the first trial. The State also wanted her as a witness for the second trial. She lived in Springfield, Missouri. The State attempted to subpoena the witness under the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases. Ark. Code Ann. §§ 16-43-402 to -409. To that end, an Arkansas subpoena was issued and forwarded to the State of Missouri, along with the witness fees. The Circuit Court of Green County, Missouri, held two hearings on the matter. The witness appeared personally at the first hearing, and by attorney at the second. The Missouri court ordered her to appear in Arkansas at the designated time and place. However, the subpoena had not been returned by the trial date.

The general rules concerning unavailable witnesses are not confusing. The definition of "unavailability as a witness" specifically includes situations in which the declarant is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A.R.E. Rule 804(a)(5). In addition, the burden of proving the unavailability of the witness is on the party who offers the prior testimony. *Lewis* v. *State*, 288 Ark. 595, 709 S.W.2d 56 (1986). A trial judge has some discretion in deciding if a good faith effort was made and whether a witness cannot be procured by process or other "reasonable means." *Spears* v. *State Farm Fire & Cas. Ins.*, 291 Ark. 465, 725 S.W.2d 835 (1987). A higher standard of proof of unavailability is required in criminal cases

than in civil cases. *See Spears, supra.*

■ The trial court correctly ruled that the State had met its burden of proving unavailability. The witness, who is the accused's sister, was out of state. She would not voluntarily attend the trial. The uniform act to secure out-of-state witnesses was followed in a timely manner. The foreign court ordered the witness to appear. The fact that the subpoena had not yet been returned from Missouri is of no significance since the trial judge had the foreign court's ruling ordering the witness to attend.

Under this sub-issue, appellant also argues that Ark. Code Ann. § 16-44-202 requires the State to establish unavailability prior to trial, rather than at trial. The cited statute is not applicable to the case at bar as it deals with the taking of depositions in a criminal case. Here, the State did not want to take a deposition; instead it sought to use prior recorded testimony.

Also under this sub-issue, appellant contends that Dorothy Hudson's motion to quash the subpoena was denied at a hearing held without notice to her or her attorney. First, there is nothing in the record to support the allegation that neither Hudson nor her attorney had notice of the hearing. Second, the subpoena was one requiring her attendance on August 15, 1988. That trial date was continued, and Hudson's attorney was present at the subsequent hearing on October 5, 1988, when the Missouri court ordered Hudson to appear as a witness in appellant's trial on October 25, 1988, the date the trial was actually held.

Further, appellant does not make a convincing argument about how the denial of Hudson's motion to quash a subpoena for an earlier trial date affects her unavailability for the October trial. Nor does he cite any authority, and there is no obvious merit in the argument. Accordingly, we affirm on the point. *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

## II. (b)

Appellant also contends under this point that A.R.E. Rule 804(b)(1), the hearsay exception for former testimony, as applied in this case, denied him his Sixth Amendment right to confrontation. His initial premise in the argument is that in his first appeal we held that the State violated his right to discover the name of

Dorothy Hudson as a witness. That premise is in error. We did not make such a holding. No mention is made of witness Hudson. Even so, we must address the rest of the argument. The crux of it is that the State did not disclose Hudson's name prior to trial as one of its witnesses, the trial court only gave appellant's attorney ten (10) minutes to interview Mrs. Hudson, and, as a result, he was denied effective cross-examination. The record on the allegation is threadbare.

BY MR. JOHNSON: [Defense Attorney]

We also object as she was surprise witness in the first trial.

BY MR. KISSEE: [Defense Attorney]

Yes, we did not have, you gave us ten minutes if I remember right to talk to her and we didn't have . . .

BY THE COURT:

Oh, I gave you all the time in the world.

BY MR. STALLCUP: [Prosecuting Attorney]

Whatever was . . .

BY MR. KISSEE:

Well, you would have given us more.

BY THE COURT:

I certainly would have.

BY MR. KISSEE:

Yes.

BY THE COURT:

Thank you.

"The Supreme Court has repeatedly indicated that while the Confrontation Clause and the hearsay doctrine protect 'similar values,' the two are not 'congruent.' So while it is true . . . that many statements receivable under the hearsay doctrine also clear the hurdle of the Confrontation Clause, it is likewise true that occasionally statements receivable under the hearsay

doctrine must be excluded because of the Confrontation Clause. . . ." D. Louisell & C. Mueller, *Federal Evidence* § 418 at p. 130-131.

Accordingly, the questions become (1) whether, under Rule 804(b)(1), appellant had sufficient opportunity at the first trial to develop the testimony of the witness by cross-examination, and, if he did, (2) whether he was nonetheless denied his Sixth Amendment right to confront the witness against him by the witness's absence from the second trial.

## II. (b)(1)

From the meager record, we conclude that even if the name of the witness was not disclosed prior to the first trial, the trial court allowed the appellant's attorney ten (10) minutes to interview the witness, and would have allowed more time if it had been requested. Further, and more importantly, appellant has not suggested any areas of cross-examination which he was unable to develop because of short notice at the first trial. He had the interview at the first trial, he had the opportunity to cross-examine at the first trial, and he has had the interval of time between the first and second trials; yet, he has failed to show any area of cross-examination he would have addressed at the first trial had he been given more notice. In short, appellant had sufficient opportunity at the first trial to develop cross-examination; thus, A.R.E. Rule 804(b)(1) was satisfied.

## II. (b)(2)

The Sixth Amendment Confrontation Clause was also satisfied. The following quote from *Ohio* v. *Roberts*, 448 U.S. 56 (1980) is particularly applicable:

> The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." *Mattox* v. *United States*, 156 U.S., at 244. This reflects the truism that "hearsay rules and the Confrontation Clause are generally designed to protect similar values," *Califor-*

*nia* v. *Green*, 399 U.S., at 155, and "stem from the same roots," *Dutton* v. *Evans*, 400 U.S. 74, 86 (1970). It also responds to the need for certainty in the workaday world of conducting criminal trials.

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*See also, Bourjaily* v. *United States*, 483 U.S. 171 at 182-83 (1987).

█ Here, the evidence comes within an acknowledged hearsay exception, the "former testimony" exception. Thus, reliability is presumed. Further, appellant had ample opportunity to cross-examine the declarant at the first trial, and he has not shown how short notice hindered that opportunity to cross-examine. The testimony had sufficient "indicia of reliability" to satisfy the Confrontation Clause.

## III.

Appellant alternatively argues that if witness Hudson's prior testimony is properly admissible, then the trial court erred in the first trial by overruling his hearsay objections to witness Hudson's testimony about appellant having a fight with a person named Baby Bob. The argument is without merit.

█ Appellant argued the point on his first appeal, and we held against him. He now makes the same argument about the same testimony in the second appeal. The doctrine of law of the case prevents an issue raised on first appeal from being raised on a second appeal, unless the evidence materially varies between the two appeals. *Hickerson* v. *State*, 286 Ark. 450, 693 S.W.2d 58 (1985). Here, there is no difference in the testimony of witness Hudson between the first and second appeals, since her prior recorded testimony was used at the second trial.

## IV.

Next, the appellant argues that the trial court erred in denying his motion for a change of venue. This argument is also without merit. Appellant presented the affidavits of two residents which recited their opinions that the appellant could not receive a fair trial in Sharp County. To establish a need for a change of venue, the appellant was obligated to show that the minds of the residents of Sharp County were so prejudiced against him that he could not receive a fair and impartial trial in that county. Ark. Code Ann. §§ 16-88-201 and -204 (1987). Affidavits, such as those at bar, which cite little or nothing beyond an affiant's own convictions that a fair trial is not possible, are insufficient to satisfy Ark. Code Ann. §§ 16-88-201 and -204. *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1988). Further, there can be no error in the denial of a change of venue if the transcription of the jury selection process shows that an impartial jury was selected. *Berry* v. *State*, 290 Ark. 223, 235, 718 S.W.2d 447 (1986). Voir dire of the jury provides adequate safeguards against pretrial publicity. *Orsini* v. *State*, 281 Ark. 348, 356, 665 S.W.2d 245 (1984).

Here, of the 52 potential jurors, 13 were excused because of their opinions based on personal knowledge or pre-trial publicity. The remainder of the jurors stated that they had not arrived at any preliminary opinions and could give the appellant a fair trial. The appellant did not have a right to a jury that was totally ignorant of the crime. *Anderson* v. *State*, 278 Ark. 171, 644 S.W.2d 278 (1983).

The decision of the trial court to deny a motion to change venue will be upheld unless it is shown that the court abused its discretion. *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988). Here, the trial court did not abuse its discretion in denying the motion for a change of venue.

## V.

In his last assignment of error, the appellant contends that the trial court erred in sentencing him to life without parole. The argument is based upon the fact that he was also charged with being subject to the habitual offender act. From that, he argues

that life is the maximum sentence for an habitual offender.

The appellant was charged with and convicted of capital murder. Ark. Code Ann. § 5-10-101(c) provides that "capital murder is punishable by death or life imprisonment without parole. . . ." Thus, appellant received an appropriate punishment for the crime of which he was convicted. The habitual offender statute was not applicable when appellant was found guilty of capital murder. It would have been applicable only if the appellant had been found guilty of a lesser included offense.

## VI.

Where, as here, the appellant has been sentenced to life without parole, we make our own examination of the record for merits, if any, of all other objections made at trial. Rule 11(f) of the Rules of the Supreme Court and Court of Appeals. We find no reversible error in the rulings on those objections.

Affirmed.