James Dominic LESHE *v.* STATE of Arkansas

CR 90-171                                803 S.W.2d 522

Supreme Court of Arkansas
Opinion delivered February 4, 1991
[Rehearing denied March 4, 1991.]

*Gibson & Deen*, by *Thomas D. Deen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Sandra Bailey Moll*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, James Dominic Leshe, was charged with two counts of rape, one by deviate sexual act and the other by sexual intercourse, of his 10-year-old stepdaughter. He was acquitted of the sexual intercourse count and convicted of rape by deviate sexual act. He has stated seven points of appeal. Reversible error occurred when a social worker was allowed to give hearsay evidence of the victim's statement to her. The judgment is reversed, and the case is remanded. We will discuss other points as necessary for guidance in the event of retrial.

## 1. Sufficiency of the evidence

The state produced sufficient evidence to take the question of Leshe's guilt to the jury. There was testimony of Ms. Weindorf, an Ashley County social worker, relating a statement of the victim to her that Leshe had engaged the victim in oral intercourse. There was also Ms. Weindorf's testimony and that of Deputy Sheriff Harris that Leshe, when confronted with Ms. Weindorf's statement of what the child had said, made a

statement which could have been considered inculpatory. The problems here are with the admissibility of that evidence, but we do not consider trial errors until after we have determined sufficiency of the evidence, including that which perhaps should not have been before the jury. *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

### 2. Hearsay testimony of victim's statement

The trial occurred on March 21, 1990. On the previous day, the prosecution notified Leshe's counsel that the victim might not be present to testify and thus the state would rely on the testimony of Ms. Weindorf. When the trial began, Leshe's lawyer moved in limine to disallow Ms. Weindorf's testimony on the ground that it was hearsay. He asserted that the state could not show that the witness was unavailable and claimed that Leshe's right to confront the witness was at stake.

At a hearing on the motion, Ms. Weindorf stated she knew the victim and her mother had moved from Ashley County, where the offense allegedly occurred, to Desha County, where the victim's mother had married a man named Streeter, and then to the State of Mississippi. She had this information a month before the trial date. Ms. Campbell, a Desha County social worker to whom the case file had been transferred, testified that she obtained the address of the victim and her mother in Leland, Mississippi, and had a Mississippi social worker check on the family. She said the Mississippi social worker said she went to the address where she found the victim, her mother, and Leshe. Ms. Campbell's information was, however, that Leshe was living in Greenville, Mississippi. Ms. Campbell notified the prosecutor of the victim's Mississippi address around February 12, 1990.

The case had been set for trial in mid-February but was continued at the defendant's request. An employee of the prosecutor testified that in February the victim's mother called the office to say she wanted to drop the charges. At a hearing in connection with the first trial setting, the prosecution asked the court to require Leshe's counsel to assure the presence of the victim when the trial was reset. The request was refused.

It was clear that the prosecutor knew more than a month before the second trial date that his witness had moved out of the

state and he might have a problem getting her to appear.

A Deputy Circuit Clerk for Ashley County testified that the prosecutor's office requested that a subpoena for the victim and her mother be mailed to a middle school in Mississippi. It was placed in the U.S. mail, without a request for a receipt upon delivery, on March 16, 1990. The prosecutor stated that the school principal had agreed to deliver the subpoena but it was not received by him. The prosecutor also stated that he knew from talking to Mississippi officials that Leshe was living with the victim and her mother and would show that Leshe's influence was the reason the victim was not present to testify.

A deputy sheriff from Mississippi testified that he was told by the victim's mother that Leshe was living with her in Mississippi.

The court found that the victim was living in a household with her mother and Leshe and was thus not in a position to exercise her desire to testify. He also stated the Confrontation Clause was not a problem because the victim had made statements to different persons, and "that to me, constitutes reliability."

### a. Rule 804(b)(5)

### i. Unavailability

The argument of the state at the trial and here is that the witness was unavailable and thus Ms. Weindorf's hearsay testimony could be admitted under ARE 804(b)(5) which makes an exception if the declarant is unavailable as a witness and there are circumstantial guarantees of trustworthiness equivalent to those stated for other exceptions.

In *Holloway* v. *State*, 268 Ark. 24, 594 S.W.2d 2 (1980), this court stated it was error to permit introduction of testimony from a prior trial because the state had dallied too long in its pursuit of the witness for the second trial to use the uniform act by which witnesses are obtained from other states for criminal trials. Ark. Code Ann. § 16-43-403 (1987). The state's failure to utilize the uniform act procedure when it could have done so was also held fatal to an attempt to substitute hearsay evidence in *Doles* v. *State*, 275 Ark. 448, 631 S.W.2d 281 (1982).

■ While a trial court has discretion in determining whether a witness is "unavailable," that discretion is not unlimited. *Bussard* v. *State*, 300 Ark. 174, 778 S.W.2d 213 (1989). In this case no effort whatever was made to serve a subpoena on the state's key witness at her Mississippi address which was readily available. There was no "good faith effort" of which the Supreme Court wrote in *Barber* v. *Page*, 390 U.S. 719 (1968), and of which we wrote in *Satterfield* v. *State*, 248 Ark. 395, 451 S.W.2d 730 (1970). The trial court erred in finding the victim was unavailable in these circumstances.

## ii. Reliability

The state argues that the hearsay evidence was admissible under Rule 803(24) if not under Rule 804(b)(5). The former rule is identical to the latter with the exception that the latter contains the unavailability requirement. Both require "equivalent circumstantial guarantees of trustworthiness."

■ It was error to conclude that because the child allegedly had made statements about being abused to "others" that the narrative read to the court by Ms. Weindorf was reliable evidence of what the child had said. The court's remark about the child having made the accusation to others than Ms. Weindorf related to the general reliability of the child. The court's concern, however, must be with respect to the reliability of the statement reported by Ms. Weindorf. As we pointed out in *Ward* v. *State*, 298 Ark. 448, 770 S.W.2d 109 (1989), the reliability of the declarant is a question for the jury to determine; the reliability of a hearsay report of what the declarant said is to be the focus of the court in determining admissibility.

To perform that task, the court looks to the indicia of reliability found in the first four exceptions to the hearsay rule, Rule 804. While these are not exclusive indicators of the reliability of hearsay evidence, some "circumstantial guarantees of trustworthiness" are required.

The court asked no questions of Ms. Weindorf about the conditions under which the statement was taken or her manner of taking it, but her testimony revealed some of the details. She stated the child did not volunteer information but responded to her questions. Ms. Weindorf did not have the original notes she

made of the conversation, but read from a narrative prepared from those notes on the day of the interview. The state points to the use of explicit sexual terminology by the child as evidence that the statement was reliable because the child was likely to have gained that knowledge as a result of being a victim of rape. It is pretty clear, however, that at least some the terminology was that of the interviewer rather than the child. We know the child responded to questions, but we do not know the questions asked or precisely what the responses were.

■ The testimony of Ms. Weindorf in which she read her narrative of the victim's statement to her was not admissible under Rule 804(b)(5) because the witness was not "unavailable," and it was not admissible under Rule 803(24) because there were no "circumstancial guarantees of trustworthiness."

### 3. Carnal abuse and rape overlap

### a. Dismissal

The trial court correctly overruled Leshe's motion to dismiss. Leshe contended that his right to equal protection of the laws was violated because the prosecution could have charged him with either carnal abuse or rape because they are the same, and carnal abuse carries a lesser sentence. He recognizes that carnal abuse and rape are both defined as sexual intercourse or deviate sexual activity with a person under the age of 14, but that carnal abuse may be committed only by a person over the age of 18. He contends there is no rational basis for the distinction.

■ In *Sullivan* v. *State*, 289 Ark. 323, 711 S.W.2d 469 (1986), this court recognized the overlapping definitions in the rape statute, Ark. Code Ann. § 5-14-103(a)(3) (1987), and the statute defining first degree carnal abuse. Ark. Code Ann. § 4-14-104 (1987). The United States Constitution is not violated by such overlapping provisions unless it would constitute discrimination against a class of persons. *See United States* v. *Batchelder*, 442 U. S. 114 (1979). Leshe contends the statutes in question here discriminate against juveniles who may be charged with rape but not with carnal abuse. He does not, however, contend that he falls within that class and stipulated he was over 18. As he is not a member of the class he claims is affected, he has no standing to complain. *Thompson* v. *Ark. Social Services*, 282

Ark. 369, 669 S.W.2d 878 (1984).

### b. Lesser included offense instruction

The trial court correctly refused to give an instruction on carnal abuse as a lesser included offense. That was the issue we decided in the *Sullivan* case. Leshe argues that even if we find no constitutional infirmity resulting from the overlapping statutes, we must hold carnal abuse to be a lesser offense included in rape because the statute defines a lesser included offense as one which differs from the offense charged "only in the respect that a less serious injury or risk of injury to the same person . . . suffices to establish the commission." Ark. Code Ann. § 5-1-110(b)(2) (1987). The argument is that the general assembly must have thought carnal abuse poses a less serious threat to the victim because they gave it a lesser sentence range.

■ We cannot agree with such an argument. The only difference between the two definitions, one of rape and one of carnal abuse, is the requirement that the perpetrator be over 18 to commit carnal abuse. That has nothing to do with the risk to the victim. The other elements are the same. As can be determined from our explanation in the *Sullivan* case, the anomaly created by the two statutes came about as a result of the process of amending the carnal abuse law apparently without consideration of the rape statute. We cannot think that the general assembly intended the difference at all, much less that it thought the same act might result in a greater risk of harm to a victim because it was given a different name or might be committed by an older person.

### 4. Instruction on corroboration of confession

"A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed." Ark. Code Ann. § 16-89-111(d) (1987).

Ms. Weindorf testified that when Leshe was confronted with her revelation of what the victim had told her he stated "he guessed he was sicker than he thought he was." Counsel for Leshe asked that the jury be instructed as follows:

You are instructed that a conviction may not be sustained

on the evidence of a confession alone but that evidence corroborating each element of the offense is required in addition to any evidence of a confession. It is for you to determine whether or not there exists sufficient evidence of corroboration.

We disagree with the state's contention that the court properly refused this instruction on the ground that it did not contain a reference to a confession "made in open court." There was no open court confession here, and to have included those words just because they are in the statute would have been surplusage. The proposed instruction was relevant. We agree with Leshe's contention that, despite the fact that no such instruction appears in the Arkansas Model Criminal Instructions approved by this court, it should have been given if it correctly instructed the jury on the law contained in the statute. We find no error, however, in the trial court's refusal to give the instruction proffered.

█ The statute only requires proof that the offense was committed by someone in order to corroborate a confession. *McQueen* v. *State*, 283 Ark. 232, 675 S.W.2d 358 (1984); *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985). *See Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986). By stating that "evidence corroborating each element of the offense is required," the instruction might have been taken by the jury to mean that there must be proof that Leshe committed each element of the offense to corroborate the confession. If a proper instruction on corroboration of a confession had been proffered, simply requiring the jury to find that the offense had been "committed," it would have been error to refuse it. *Davis* v. *State*, 115 Ark. 566, 173 S.W. 829 (1914).

### 5. Confession suppression

The inculpatory statement alluded to above was allegedly made in the presence of Deputy Sheriff Harris as well as Ms. Weindorf. Harris testified that he had read to Leshe a standard rights form, and Leshe had placed his initials beside each rights statement on the form and signed his name at the bottom. Like the form we criticised in *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984), the one used here contained no express

waiver provision. Leshe moved to suppress on the ground that he had not waived his rights.

■ In *North Carolina* v. *Butler*, 441 U.S. 469, 471 U.S. 369 (1979), the Supreme Court stated that the mere fact that a confession is eventually obtained from an incarcerated person does not conclusively show that he waived his right not to make it. The test remains, however, whether the evidence showed waiver under the totality of the circumstances, and we do not reverse unless the trial court's conclusion is clearly against the preponderance of the evidence. *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989).

The circumstances here suggest that the statement was made very shortly after Leshe was informed of his rights. Ms. Weindorf testified that Leshe was sober. There was no evidence of any sort of duress. We cannot say the trial court was wrong to refuse to suppress the statement.

Reversed and remanded.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. This case highlights a problem that this court will face again as complaints of juvenile sex abuse cases continue to increase. Simply stated, the problem occurs when a juvenile complainant decides not to testify against the alleged abuser or otherwise is unavailable for trial. In what form, if any, may the juvenile's testimony be presented to the jury?

Surely the majority opinion is correct. An unsworn story told by the juvenile to a social worker and then translated into the social worker's own words and read to the jury does not meet minimum standards of reliability. That begs the question, however, of what would have met those standards, short of direct testimony.

There is nothing to confirm that the prosecutor ever talked to the juvenile, much less recorded her statements for transcription or use at trial. A recorded statement under oath, whether video or audio, would have come much closer to assuring reliability than a social worker's narrative. But even if recorded, admissibility would have been highly suspect without cross-examination by the

defendant and clear application of a firmly rooted hearsay exception. *See Bourjaily* v. *United States*, 483 U.S. 171 (1987); *Cogburn* v. *State*, 292 Ark. 564, 732 S.W.2d 807 (1987).

The United States Supreme Court recently departed from what had been perceived as a trend in favor of child witnesses. *Coy* v. *Iowa*, 487 U.S. 1012 (1988); Note, *The Confrontation Clause Applied to Minor Victims of Sexual Abuse*, 42 Vand. L. Rev. 1511 (1989). In *Coy*, the Court struck down a child shield law which permitted use of a one way screen in court to shield the child from actually seeing the defendant. Defense counsel was still permitted to cross-examine the child. The Court said the Iowa statute effectively denied the defendant his right to confront witnesses face-to-face.

Certain videotaped depositions of child witnesses, however, continue to pass constitutional muster. Arkansas permits the admission into evidence of depositions for alleged juvenile victims when good cause is shown. *See* Ark. Code Ann. § 16-44-203 (1987). That statute contemplates a deposition in judge's chambers with cross examination by the defendant who is face to face with the alleged victim. We have upheld the constitutionality of that procedure. *McGuire* v. *State*, 288 Ark. 388, 706 S.W.2d 360 (1986). Use of this procedure, though perhaps costly, would have obviated the problems we face in this case.