William MEINE *v*. STATE of Arkansas

CR 91-188                                          827 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered April 6, 1992

*Ledbetter & Associates, Ltd.*, by: *Thomas D. Ledbetter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. William Meine, the appellant, was charged with rape on October 6, 1987. He was tried by jury, convicted of the charge, and sentenced to 35 years imprisonment on January 31, 1991. He contends his right to a speedy trial was violated. We agree. The conviction is reversed and the case dismissed.

Meine was alleged to have raped his then 11-year-old step-daughter. On July 31, 1987, the victim, accompanied by her

boyfriend, David Hall, reported Meine had been forcing her to engage in sexual intercourse with him for four months. The victim was then referred for a gynecological exam to Dr. Shannon Card. Criminal investigator Kapsos interviewed Dr. Card on September 29, 1987, and was informed that the victim was suffering from vaginitis, a bacterial infection, which was consistent with her having engaged in sexual activity.

On November 10, 1987, Meine was found to be indigent, and counsel was appointed to represent him. An omnibus hearing was conducted on November 18, 1987, and trial was set for March 10, 1988. On February 3, 1988, the Court continued the case on it's own motion until June 1, 1988. On June 1 trial was again reset by the Court for August 5, 1988. In it's response to Meine's later motion to dismiss, the State asserted the June 1 continuance was at its request due to the unavailability of an unnamed material witness. The case was again reset by the Court on July 11, 1988, and scheduled for August 17, 1988. The State's response attributed this continuance to docket congestion. The docket shows the case was continued on a State motion until October 5, 1988, just one day short of the one year speedy trial period. The response to the motion to dismiss asserted this continuance was necessary due to the failure of service on a material witness, Dr. Card.

Subpoenas for witnesses for the August 17 trial setting were issued, but Dr. Card was not served. No explanation is offered for the failure to serve him.

On October 5, 1988, the State moved for continuance, asking that the trial be rescheduled for October 24, 1988. The motion stated that Dr. Card was a material witness, and that he had said on September 1, 1988, that he wished to be released from his subpoena due to a schedule conflict. He put his request in writing on September 22, 1988, and on that date the State unilaterally released Dr. Card. The State's motion also asserted that prior to releasing Dr. Card attempts were made to obtain a video-deposition, but due to schedule conflicts between the State and defense counsel, the deposition was not possible. No facts were stated in support of the asserted conflict. Meine's counsel contends he objected to each of the requested continuances and has at all times stood ready for trial.

The motion for continuance contended the period from

October 5 to October 24 should be excluded from the speedy trial period pursuant to Ark. R. Crim. P. 28.3(d)(1). Meine objected and asserted his speedy trial demand, but the Court overruled his objection and granted the State's motion. The docket shows the case reset for October 31, 1988, and notes that the time was not to be charged to the State. Meine's counsel moved to dismiss on October 14. The motion was denied at a pretrial hearing on October 31.

The parties devote some of their arguments to the delay which occurred after October 31, 1988, but we need not consider them because we find Meine was entitled to dismissal after the passage of 12 months from the date he was charged.

During a pretrial hearing on January 30, 1991, Meine sought to present evidence of other sexual activity by the victim to show that the accusations were fabricated to draw suspicion away from David Hall. The prosecutor responded by saying he did not deny the victim was sexually involved with David Hall. He insisted that it made no difference in view of witnesses who would testify they saw Meine and the victim engaged in sexual activity and that testimony about the victim's relationship with Hall should be excluded under the rape shield law. Ark. Code Ann. § 16-42-101 (1987). In the course of that discussion, the Court asked if the State intended to introduce the vaginitis evidence. The prosecutor responded he did "not intend to call the doctor who made the examination as a witness, except rebuttal if necessary." Dr. Card was not called as a witness.

### The speedy trial rule

■ Meine was charged October 6, 1987. He was thus entitled, pursuant to Ark. R. Crim. P. 28.2 (a), to be brought to trial by October 6, 1988. He clearly presents a *prima facie* case of violation of his right to a speedy trial provided in Ark. R. Crim. P. 28.1. The burden was thus upon the State to show the delay was the result of Meine's conduct or otherwise legally justified. *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990); *Horn v. State*, 294 Ark. 464, 743 S.W.2d 814 (1988); *Duncan v. State*, 294 Ark. 105, 740 S.W.2d 923 (1987).

The only possibility for concluding there was legal justification for the violation is found in Rule 28.3(d)(1) which provides:

The following periods shall be excluded in computing the time for trial:

\* \* \*

The period of delay resulting from a continuance (calculated from the date the continuance is granted until the subsequent date contained in the order or docket entry granting the continuance) granted at the request of the prosecuting attorney, if:

(1) the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date;

*Due diligence*

Meine refers to the fact that Dr. Card was not called as a witness by the prosecution. The fact that Dr. Card was not needed for the State's case in chief is not argued as a direct basis for finding that his purportedly unavailable testimony was not "evidence material to the state's case." The argument is, in other words of Rule 28.3(d)(1), that passage of time due to a continuance should be charged to the State unless it can be shown that "due diligence has been exercised to obtain" the allegedly unavailable material evidence.

No continuances during the critical year were sought by the defense. Two periods of delay with respect to which we must examine the matter of due diligence were requested by the State. First the continuance of August 17, 1988, and then the one granted on October 5, 1988. Both were granted on the basis of the unavailability of Dr. Card.

The record shows that Dr. Card was not summonsed for any of the trial settings prior to August 17, 1988, and the summons for that setting was issued on August 11 but not served. The only service of summons was that which was issued on the day set for the trial, and that was not served until August 23, 1988. No explanation is offered for the complete failure to serve witnesses in a timely fashion for the August 17 trial date, and there is no indication that Dr. Card could not have appeared had he been

timely served.

■ The cases which have looked at the State's diligence with respect to obtaining the presence of witnesses have mostly been in connection with efforts to read preserved testimony into evidence in lieu of presenting the witness. The standard for those situations was established in *Barber* v. *Page*, 390 U.S. 719 (1968). A witness is not unavailable "unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial." *Satterfield* v. *State*, 248 Ark. 395, 451 S.W.2d 730 (1970). The *Satterfield* case involved a witness in trade school in Kentucky and a sheriff who, upon ascertaining that he was in another state, abandoned any further effort to obtain the witness. We wrote:

> We have combed the record in this case and have concluded that the efforts of the State to obtain the presence of witness Larry Dunn were far too feeble to constitute 'good faith effort'. . . .

> \* \* \*

> It is apparent from the circumstances that the State was put on notice before the pretrial date that Dunn was not in the jurisdiction; yet no effort was made to ascertain his whereabouts until a few days before the actual trial date. It was shown that Dunn's people lived in the county, and since he was attending school, as opposed to being on a transient trip, it is just as logical that his address in Kentucky could have been obtained by simple inquiry. . . . Finally, we would note that earlier discovery of Dunn's whereabouts would have made it practical to have instituted proceedings under . . . part of a uniform act for obtaining witnesses from without the State.

■ The same standard was utilized in *Leshe* v. *State*, 304 Ark. 442, 803 S.W.2d 522 (1991):

> While a trial court has discretion in determining whether a witness is 'unavailable' that discretion is not unlimited. *Bussard* v. *State*, 300 Ark. 174, 778 S.W.2d 213 (1989). In this case no effort whatever was made to serve a subpoena on the state's key witness at her Mississippi address which was readily available. There was no

'good faith effort' of which the Supreme Court wrote in *Barber* [citation omitted], and of which we wrote in *Satterfield* [citation omitted]. The trial court erred in finding the victim was unavailable in these circumstances.

In the speedy trial context the question of unavailability usually concerns the State's assertion that the accused absented himself after arrest. A standard similar to that in the *Barber* case is utilized. In *Chandler* v. *State*, 284 Ark. 560, 683 S.W.2d 928 (1985), an accused was arrested and subsequently moved to her mother's Stuttgart home. The mother posted bond and left her address on the bond release form. The municipal clerk forwarded documents to the Circuit Court but did not forward the bond release form. Notice was not sent to the Stuttgart address and the accused did not appear, prompting issuance of an alias warrant. A writ of prohibition was sought after the expiration of the speedy trial period. We granted the writ. We wrote, "[t]he State has a duty to make a diligent, good faith effort to bring an accused to trial. The failure of the State to check the available court records or otherwise demonstrate any diligence in locating the accused over a two and one half year period can not be excused". In *State* v. *Washington*, 273 Ark. 82, 617 S.W.2d 3 (1981), a delay attributable to the failure to follow through with the service of warrants led to dismissal of the charges at the trial level and affirmance by this court.

Turning to this case, lack of diligence on the part of the prosecution is clear. First, the failure to effectuate service for the August 17 trial is unexplained, in spite of the fact that the State was approaching the end of the speedy trial period. It was an identical lack of diligence which formed the basis for error in the *Satterfield* and *State* v. *Washington* cases. Next, the State's obvious failure to inquire of Dr. Card to ascertain a good date prior to scheduling the trial for October 5 is akin to the failure to obtain the witness's address in the *Leshe* case. Just as the address was readily available so was information concerning Dr. Card's schedule.

Finally, releasing Dr. Card without first obtaining his deposition when the State had knowledge from at least September 1 that he was not able to attend the October 5 setting shows a lack of diligence, as there is nothing to support the State's

assertion that they could not obtain a time for taking a deposition. No setting was requested of the Court, and no notice of a deposition was presented to defense counsel. The burden on the State to show due diligence was not met.

Reversed and dismissed.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. This court holds the trial court abused its discretion in refusing to dismiss appellant's case on speedy trial grounds, and does so because it concludes the state failed to show it exercised due diligence in bringing appellant to trial. Actually, the majority holds the state failed to make a "good faith effort" in obtaining Dr. Card's presence as a witness and improperly using Card's presence as a witness and improperly using Card's unavailability as an excuse for unnecessary continuances. I disagree.

The majority court asserts the state should have done more to effectuate service of its subpoena for Dr. Card so as to ensure Card's presence at the August 17, 1988 trial setting. In support of its holding, the court cites *Leshe* v. *State*, 304 Ark. 442, 803 S.W.2d 522 (1991), wherein this court stated that, while a trial court has discretion in determining a witness is "unavailable," that discretion is not unlimited. In *Leshe*, we stated no effort whatever was made to serve a subpoena on the state's key witness at her Mississippi address, which was readily available, and therefore held the state made no "good faith effort" in obtaining the witness.

Here, about six days before the August 17 trial date, the state timely requested the circuit clerk to issue a subpoena for Dr. Card, but because the subpoena had not been duly served on Card before trial, the state promptly brought the matter to the trial court's attention and asked for a continuance, which was granted until October 5, 1988. The state then on August 17, 1988, and the defense on September 23, 1988, requested subpoenas for Dr. Card once again to obtain the doctor's presence for the October 5th trial. Clearly, the state exercised its efforts in trying to obtain Card's presence for the August 17th setting, but the majority requires more than the state's having duly and timely requested a subpoena for Card. The majority opinion raises questions as to

what must prosecutors do in these matters to show they have made a good faith effort in the presence of their witnesses.

In addition to *Leshe*, the majority court also cites the cases of *Chandler* v. *State*, 284 Ark. 560, 683 S.W.2d 928 (1985), and *State* v. *Washington*, 273 Ark. 82, 617 S.W.2d 3 (1981), to support its position. *Chandler*, however, involved a drastically different situation where the state made no efforts in locating the accused for a two and one-half year period even though, during that period, the accused had resided at the same residence in Stuttgart, Arkansas, and that address appeared on the accused's bond release form. In the *Washington* case, this court *affirmed* the trial court's *dismissal* of the defendants' case on speedy trial grounds, and there, the state requested no subpoena, nor was a subpoena in question. This court upheld the lower court's ruling to dismiss because the sheriff had failed to notify the defendants to appear in court.

The majority court also criticizes the state's failure to inquire of and obtain from Dr. Card a date Card could appear before scheduling the trial for October 5, 1988. As previously mentioned, appellant also subpoenaed Dr. Card for the October 5th date, so both the state and the appellant had to be concerned about Card's appearance. The court should not be critical of the state's inaction in this regard without assigning the same criticism to appellant. In my view, both parties sought Dr. Card as a material witness, and as happens, the doctor proved somewhat difficult to obtain his trial presence when it got closer to the trial date. In any event, if the appellant desired the doctor's appearance, he could have sought enforcement of his subpoena, if he had any objection to a continuance.

For the reasons above, I dissent to the majority court's reversal and dismissal of this case.

HAYS, J., joins this dissent.