Winston HOLLOWAY *v.* STATE of Arkansas

CR 79-186                                           594 S.W. 2d 2
Supreme Court of Arkansas
Opinion delivered February 4, 1980
Rehearing denied March 10, 1980

*William H. Craig,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Winston Holloway was tried with two co-defendants and convicted of several offenses in connection with the robbery of the Leather Bottle Restaurant in Little Rock. We affirmed their convictions but our judgment was reversed by the United States Supreme Court, which ruled that since one lawyer had represented all three defendants, a conflict of interest preventing a fair trial existed. *Holloway* v. *State,* 260 Ark. 250, 539 S.W. 2d 435 (1976); ·rev'd, 435 U.S. 475, 98 S. Ct. 1173, 55 L.Ed. 2d 426 (1978).

Holloway, in a separate retrial in the Pulaski County Circuit Court, was convicted of one count of robbery, two counts of rape and three counts of using a firearm in the commission of a felony. He was sentenced to life plus 116 years imprisonment. Holloway argues on appeal that the trial court improperly allowed a doctor's testimony from the first trial to be read as evidence and that the prosecuting attorney's closing remarks were so prejudicial they mandated a mistrial.

The evidence of Holloway's guilt was substantial. He was identified by two male employees of the Leather Bottle. Two female employees testified that Holloway raped them. Holloway's defense was that he could not have done it because he was somewhere else at the time.

The first allegation of error is two-fold. First, the appellant asserts it was error to read into the record a doctor's testimony given at the first trial since the doctor was not unavailable within the meaning of Uniform Rules of Evidence, Rule 804(a)(5). Second, he argues it was improper under Uniform Rules of Evidence, Rule 804(b)(1) to admit the former testimony since, when it was given, the appellant's lawyer was representing two other co-defendants and could not properly cross-examine the doctor. For both reasons, the

appellant also alleges his Sixth Amendment right to counsel was violated.

Dr. David Freuh had examined both females shortly after the incident. He testified at the first trial that both females had had sexual intercourse within the prior six hours. That was the substance of his testimony. He found no bruises or trauma and he did not testify that the women had been raped.

After the first trial, Dr. Freuh moved from Arkansas to Texas. The prosecuting attorney's office did not know this until shortly before the second trial. The State moved to permit the admission of the doctor's prior testimony as an exception to the hearsay rule because the witness was "unavailable." Uniform Rules of Evidence, Rule 804(b)(1), provides for such an exception if a witness is unavailable and if his presence cannot be secured by "process or other reasonable means." The use of such testimony brings into play two constitutional rights of a defendant. The confrontation clause of the Sixth Amendment to the United States Constitution gives the defendant the right to face the witness against him. *Barber* v. *Page,* 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968). The due process clause of the Fourteenth Amendment to the United States Constitution requires that a defendant be given a fair trial. Compare *Dutton* v. *Evans,* 400 U.S. 74, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970) (Harlan, J., concurring) and *McCormick, Evidence* 2d ed. (1972) §§ 252-253.

The question on appeal is whether the trial court abused its discretion in finding that the State was unable to secure the doctor's presence by "process or other reasonable means." An investigator with the prosecuting attorney's office, Ed Outlaw, testified that the summons to Dr. Freuh was issued on March 15, 1979. It was received by Outlaw March 19, 1979. On the 21st he contacted a person who worked for the Medical Center and who regularly saw that subpoenas for Medical Center witnesses were served. That person did not inform the prosecutor's office that Dr. Freuh was out of state until March 28th. Outlaw assumed the doctor had been served until he was informed otherwise. On the 29th and 30th Outlaw made at least three telephone calls to Beaumont,

Texas to both the office and home of Dr. Freuh in an effort to reach him. He was unable to do so. Outlaw testified he was familiar with the Interstate Rendition of Witnesses Act, Ark. Stat. Ann. § 43-2006 (Repl. 1977), but that is required about two weeks to get the necessary papers to secure a witness from out of state under that Act.

Were the efforts by the State reasonable? We do not believe they were. They did not meet the standards of good faith we require. See, *Satterfield* v. *State,* 248 Ark. 395, 451 S.W. 2d 730 (1970). The State knew on May 15, 1978, when the United States Supreme Court reversed Holloway's conviction, that a new trial would be necessary, but did not obtain a subpoena until March 15, 1979. Then the State waited on the Medical Center to find the witness until it was too late to obtain him under the Interstate Rendition Act. This was inexcusable.

The doctor's testimony was, however, not critical. The State's misconduct was, therefore, harmless error. He only testified the women had recently had sex. A rape victim's testimony need not be corroborated. See, *Spencer* v. *State,* 255 Ark. 258, 499 S.W. 2d 856 (1973). *Satterfield, supra,* does not demand reversal. There, the missing witness was a suspected accomplice and his presence particularly important. We find no prejudice here. The witness had already said all he could be expected to say.

The same holds true regarding the argument that the testimony from the first trial was not admissible because the witness had not been properly and fully cross-examined. Holloway's defense was he did not rob the Leather Bottle, nor rape the women. What more could have been asked of the doctor who said the women had had sexual intercourse within six hours?

Just as we believe there was no violation of the Uniform Rules of Evidence, we also believe there was no violation of the confrontation clause of the Sixth Amendment. That clause is not absolute. It does not require that every criminal defendant be allowed to confront every witness against him

every time he is tried. *McCormick, supra* § 252. Neither was due process violated.

During his closing remarks the prosecutor made a statement which Holloway argues was prejudicial. Those remarks are as follows:

> . . . We've reached that point in the criminal justice system where the action is. Where the question is decided as to what is going to be done. You are the ones who determine what kind of criminal justice system we have. In this case the victims have done their job. They have come in here and testified despite the humiliation and the embarrassment of that. They've come in here and they have testified. The police have done theirs and we have done ours, Mr. Haynes and I. And now, it is your turn to do yours. What happens is all in your hands now. You've got a man here that has told you that he has already committed felonies in three different states and you've got more than ample evidence here to convince you beyond any reasonable doubt that he is the person who robbed the Leather Bottle, took all this money. He is the person that first raped . . . and he is guilty of all the charges because of his participation. Now, you've got to go out in that jury room and decide his guilt or innocence and you must assess punishment for each of these offenses. And, I couldn't be more serious or sincere when I tell you that this is a case where I honestly do not see how you can consider anything other than the maximum punishment given you in the instructions for each and every offense listed. I think that justice demands it. I think that it will be a travesty if we get anything less. And, I think you need to show people involved in this the firmness of your convictions how you feel by doing this quickly. Ladies and gentlemen, we've done our part. It's your turn now and I trust and pray that justice will be done in this case. Thank you.

The court had, of course, instructed the jury to disregard opening and closing arguments by the attorneys as not being evidence. It is not improper for a state's attorney to argue, as

it did, for the maximum punishment. See *House* v. *State,* 192 Ark. 476, 92 S.W. 2d 868 (1936). It is a matter of discretion with the trial court as to whether a mistrial should be granted and that discretion will not be disturbed on appeal unless it is shown to have been abused. See generally *Hill* v. *State,* 253 Ark. 512, 487 S.W. 2d 624 (1972). We do not find the remarks improper as a matter of law. Nor do we find they were unjustified or unwarranted. The State may argue for the maximum punishment in sensible language just as a defendant may argue for the minimum punishment. This defendant was charged and convicted of serious crimes and the State was warranted in asking for the maximum punishment.

Because the appellant received life imprisonment, we must examine the record for other errors which may have been preserved at the trial level but not argued on appeal. Rules of Crim. Proc., Rule 36.24. We found none which would require us to reverse the judgment of the trial court.

Affirmed.