William Charles BREWER *v.* STATE of Arkansas

CR 80-15                                        599 S.W. 2d 141
Supreme Court of Arkansas
Opinion delivered June 2, 1980

186

*John W. Achor*, Public Defender, by: *Sandra Trawick Beavers*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. A Pulaski County jury convicted the appellant of kidnapping, robbery and rape on October 15, 1979. His punishment was assessed at life imprisonment plus a $5,000 fine on the kidnapping conviction, life imprisonment plus a $15,000 fine on the rape conviction, and life imprisonment plus a $5,000 fine on the robbery conviction. The court ordered the sentences to run consecutively, and this appeal naturally follows.

For reversal appellant argues: (1) that the trial court erred in denying his motion for a mistrial; and, (2) that the trial court erred in allowing the introduction of certain articles of evidence and improper testimony. We do not agree with the appellant on either argument.

On July 6, 1979, the victim and her boyfriend were riding around in an automobile about 11:00 p.m. They stopped at a service station on Broadway in North Little Rock, and the boyfriend got out of the passenger side of the car and went into the restroom. Immediately after he went in-

side, the appellant opened the door and got into the automobile on the passenger side. He pointed a gun at the victim and told her to drive away. He caused her to drive to a place in the Dixie Addition of North Little Rock and robbed her of $14. He was apparently dissatisfied with the amount of money and proceeded to talk abusively to the victim and ordered her to drive to Little Rock.

Subsequently, the appellant decided to drive the automobile. While he was driving, he forced the victim to undress as he drove around the south part of Little Rock. He held the gun in his possession at all times, and the victim tesified she was very scared. She finally obeyed his order, removed her clothes, and got into the back seat of the automobile.

When he came to a secluded spot, he stopped the automobile and got into the back seat where he attempted to rape the victim. At first he could not accomplish the act of sexual intercouse and forced the victim to perform an act of oral sex on him. After the oral sex, he then completed the act of sexual intercourse. During the rape the victim was injured and bled considerably.

The appellant then allowed the victim to dress and return to the front seat. According to the victim, the appellant stated he might as well kill her at that time because he was going to be in a lot of trouble for what he had done.

They returned to North Little Rock and were driving down Broadway when the vehicle was stopped by a North Little Rock policeman. The appellant was still driving the car at the time of the apprehension. When the police stopped the vehicle, the appellant hid the gun under the front seat where it was later recovered.

The victim was taken to the medical center and was examined by a doctor. The doctor testified that he examined the victim at approximately 4:00 a.m. on July 7, 1979. The pelvic examinations revealed lacerations around the vagina at the hymenal ring, and these injuries were bleeding at the time of the examination. The doctor also performed a wet prep

and determined the presence of motile sperm, and a test for prostatic acid phosphatase revealed the presence of male secretions. The doctor also collected specimens from her clothing and pubic hair.

Officers Dixon and Grace apprehended the appellant about 2:20 a.m. on July 7, 1979. After taking appellant to the police station, they took his clothing that was later introduced into evidence. Both officers testified that they observed blood on the back seat of the vehicle, on the clothing of the victim, and on the appellant's clothing.

Officer Baker of the North Little Rock Police Department questioned the appellant concerning the incident. Appellant denied any knowledge of the alleged crimes and stated that he had first seen the victim at the Roadrunner Service Station on East Broadway at Boyer Street for a few minutes before he was stopped by the police. He testified the victim asked him directions; and, when she could not understand his directions, he offered to drive her to the desired destination. His statement was that he had been in the vehicle only three or four blocks from the spot where he was stopped by the police officers.

Appellant's first point for reversal is that the trial court erred in denying his motion for a mistrial after the state elicited testimony from the victim that she had been a virgin prior to the rape. The question asked by the prosecuting attorney was, "Cynthia, had you ever had sexual intercouse?" The witness replied in the negative. An objection was made by defense, and a motion for a mistrial was made outside the presence of the jury. The court agreed with the appellant that the remark was improper and instructed the jury to disregard the question regarding prior sexual activity of the witness.

Appellant correctly states the rule of law that a mistrial is an extreme and drastic remedy which should be resorted to only when there has been a error so prejudicial that justice could not be served by continuing the trial. *Limber* v. *State*, 264 Ark. 479, 572 S.W. 2d 402 (1978). The appellee is correct in stating when an objection is made by the opposing counsel, and the objection is sustained and followed by the rebuke

from the bench in the form of an admonition from the presiding judge to the jury, the prejudicial statement is thereby cured. *Johnson* v. *State*, 254 Ark. 293, 495 S.W. 2d 115 (1973). We have frequently held that a mistrial should only be resorted to when there has been an error so prejudicial that justice could not be served by continuing the trial. The sound discretion of the trial court should not be disturbed unless abuse of that discretion is shown. *Chaviers* v. *State*, 267 Ark. 6, 588 S.W. 2d 434 (1979); and *Holmes* v. *State*, 262 Ark. 683, 561 S.W. 2d 56 (1978).

The question here then is whether the question and answer were so prejudicial as to require a mistrial or whether this incident was of such a nature that the prejudice was cured by sustaining the objection and admonishing the jury.

It makes no difference whatsoever whether the victim of rape was a virgin or a prostitute. The offense of rape is committed if the person engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Therefore, prior sexual conduct has no relevancy to the issue in question. We do not think the prejudice was so great as to call for a mistrial, and we think the court acted properly in continuing the trial after admonishing the jury to disregard the improper question and answer.

We do not believe that Ark. Stat. Ann. § 41-1810.1 (Repl. 1977) has any application in this case. This statute relates to specific instances of the victim's prior sexual conduct. Certainly, this question did not relate to specific instances of the victim's prior sexual conduct but related to the lack of prior specific instances of sexual conduct. The primary purposes of this statute were to protect the victim and encourage rape victims to participate in the prosecution of their attackers. Appellant further argues the question and answer violated Rule 403, Uniform Rules of Evidence. This rule provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury. In this particular instance, we feel the action of the court reduced the statement to the category of harmless error regardless of the relevancy. The over-all evidence is so

overwhelming that this statement is harmless beyond a reasonable doubt. *Pace* v. *State*, 265 Ark. 712, 580 S.W. 2d 689 (1979).

Appellant's second argument is that the trial court erred in allowing articles of the appellant's clothing to be introduced into evidence together with testimony that there were human bloodstains on the clothing.

The testimony was that the appellant's underwear had stains inside the front fly area which consisted of human blood and spermatoza. There was no attempt made to determine when or how the blood got there or from whom it had come. Appellant argued, by way of motion in limine, that this evidence should be excluded under Rules 401 and 402, Uniform Rules of Evidence. The court overruled the objection and allowed the introduction of the evidence. Appellant contends the clothing and stains were not in any way related to any consequential fact or material proposition at issue in the case. We disagree with this argument.

This evidence tends to corroborate the testimony of the victim, the police officers, and the medical examiner. It also tends to contradict the statement of the appellant that he had been in the car for only a period of time as to allow him to drive three or four blocks.

We might note that Rule 402, Uniform Rules of Evidence, states that all relevant evidence is admissible except such evidence as may be excluded by statutes or rules.

In the case of *Bly* v. *State*, 267 Ark. 613, 593 S.W. 2d 450 (1980), we sustained the introduction of bloodstained seat covering from an automobile as being relevant to the issue of murder. In *Bly* the evidence supported testimony by witnesses other than the accused. We apply the same reasoning to the present case. We agree that there was no evidence the blood was the victim's, but it is nevertheless relevant and a proper matter for consideration by the jury in weighing the facts presented to them.

Actually, the argument of appellant on this point really

goes to the weight to be given the evidence rather than to its relevancy. We are not unmindful Rule 403 of the Uniform Rules of Evidence permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of prejudice. We think in this case the probative value substantially outweighed the danger of unfair prejudice, confusion of issues, or misleading the jury.

We have examined the record for all possible legal errors, as is our practice in such cases; and, finding none, we affirm the judgment.

Affirmed.