ON REHEARING EX MERO MOTU
Tracy Leon Pettway, the appellant, was convicted for first degree rape and kidnapping. He was sentenced to two consecutive terms of life imprisonment. He raises seven issues on this appeal from that conviction.
 I.
Dr. Scott Austin Gilchrist examined the victim in the emergency room and gathered evidence. On March 5, 1991, he notified the district attorney by letter that he was " a practicing OB/GYN physician in Dothan, Al., and am unable to leave town during the week of March 18-23 due to my office, surgery and delivery schedules." R. 408. The appellant's trial began on March 18, 1991.
The appellant was first tried and convicted for these same offenses in 1989. These convictions were reversed on appeal because of the improper comments of the district attorney in his opening statement to the jury. Pettway v. State,571 So.2d 394 (Ala.Cr.App. 1990). At the commencement of the instant trial, the prosecutor informed the trial court that Dr. Gilchrist was not available and requested to be allowed to read his testimony from the transcript of the appellant's first trial. This request was granted over the strenuous objection of defense counsel, the same attorney who had represented the appellant at his first trial.
Before the physician's testimony was read into the record, defense counsel renewed his objection and argued that he was being denied the constitutional rights of confrontation and cross-examination. That objection was overruled by the trial court, which found the objection "very hard to fathom in view of the fact that you personally cross-examined him last time." R. 230.
"Whether the party seeking the admission of the prior testimony has produced sufficient proof of the 'unavailability of an absent witness is addressed to the sound discretion of the trial judge.' " Lamar v. State, 578 So.2d 1382, 1389
(Ala.Cr.App. 1991). The party offering the transcript of the testimony of a witness from a prior judicial proceeding has the burden of showing that the party has exercised due diligence in securing the attendance of the witness. Williams v. Calloway,281 Ala. 249, 252, 201 So.2d 506, 508 (1967).
 "The burden of proving the unavailability of the witness rests upon the party offering the prior testimony. If there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. Ohio v. Roberts, 448 U.S. [56,] at 74, 100 S.Ct. [2531,] at 2543 [, 65 L.Ed.2d 597 (1980)]. The lengths to which the prosecution must go to produce a witness is a question of reasonableness. California v. Green, 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 1951 n. 22, 26 L.Ed.2d 489 (1970)."
Burns v. Clusen, 798 F.2d 931, 937 (7th Cir. 1986).
In this case, even taking into account the serious shortage of obstetricians in this state, an argument which was not made at trial, the prosecution failed to present sufficient proof of the witness's unavailability.
 "In order for former testimony to be admissible in present litigation, proof must be made to the reasonable satisfaction of the trial judge that the personal attendance of the witness at court is not procurable or, if procurable, is ineffective, *Page 739 
in consequence of legally recognized causes, to procure his testimony. The following cases of nonproduction of the witness have been held sufficient: that the witness is dead; that the witness is permanently or indefinitely absent from the state; that the witness cannot be found after diligent search; that the witness is in military service in time of war; that the witness is now ill and, in all probability, will never be able to testify again; that the opponent has caused the witness to be absent; that the witness is now insane; that the witness has become disqualified by facts occurring subsequent to the former trial if, but only if, the party now offering the former testimony is not responsible for such disqualification and that the witness now avails himself or herself of a privilege not to testify."
C. Gamble, McElroy's Alabama Evidence § 245.07(8) (4th ed. 1991) (footnotes omitted).
Dr. Gilchrist's letter to the district attorney shows that he is associated with the Women's Medical Center, and that, including himself, there are five physicians at that Center. R. 408. There was no showing that the prosecution had attempted to make arrangements for Dr. Gilchrist to testify "out-of-turn" or at a prearranged time on one given day. There was no showing that the prosecution had contacted Dr. Gilchrist to see if it would have been possible for Dr. Gilchrist's associate physicians to "cover" for him during his absence. It summary, there was simply no showing that the prosecution exercised due diligence or good faith in attempting to secure Dr. Gilchrist's appearance for trial.
 "[T]he rule has long prevailed in this state, as it does in most states, that the mere fact that testimony has been given in a cause in a former proceeding between the parties to a case on trial is no ground for admitting it in evidence. Even in such cases where there was opportunity for cross-examination before such evidence can be admitted it must be shown that the witness or witnesses whose testimony is offered are not available for examination at the time of the trial."
Nelson v. Lee, 249 Ala. 549, 556, 32 So.2d 22, 28 (1947).
 "The constitutional right of confrontation and cross-examination to the extent guaranteed by the Sixth and Fourteenth Amendments cannot be side-stepped because it happens to be convenient for one of the parties. The importance of this right is emphatically demonstrated by the existence of the numerous safeguards designed for its protection. In addition to the Sixth Amendment of the United States Constitution, the right is also guaranteed by the Constitution of the State of Alabama, Article I, Section 6, Constitution of Alabama, 1901. See also Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. It is only when all of these safeguards have been complied with, particularly with reference to the case before us, the requirement of proper proof that the witness is unavailable, that the admission of his prior testimony does no violence to protected constitutional rights."
Holman v. Washington, 364 F.2d 618, 62324 (5th Cir. 1966) (emphasis in original).
Despite this error, the admission of Dr. Gilchrist's former testimony was harmless. The substance of his testimony was that he examined the victim on February 15, 1989, that the physical examination revealed no evidence of trauma, but that the gynecological exam did reveal "several reddened areas consistent with trauma" and the presence of "some cloudy dried material consistent with semen." R. 233. He testified that the superficial abrasions he discovered were "consistent with forced penetration." R. 236.
Only the testimony of Dr. Gilchrist on direct examination at the former trial was read into evidence. Defense counsel declined to have the testimony on cross-examination read to the jury.
The doctor's testimony was not extensive and did not have any special significance. Compare Lackey v. State, 288 Ark. 225, *Page 740 703 S.W.2d 858, 860 (1986) ("Where the prior testimony of the witness is as extensive and significant as that of the doctor in this case, the reading of it to the jury, where the state's showing of the unavailability of the witness is insufficient, is prejudicial") with Holloway v. State, 268 Ark. 24,594 S.W.2d 2, 4 (1980) (erroneous admission of doctor's testimony was not prejudicial). Therefore, we find the erroneous admission of the doctor's prior testimony to constitute harmless error.
 II.
However, we find a second error in the trial of the appellant that requires a reversal of his conviction. The trial court improperly refused to allow the victim to be cross-examined concerning her pecuniary interest in the civil suit she had filed against the appellant.
On cross-examination of the victim the following occurred:
 "Q. [defense counsel]: Ma'am, do you expect to get any money out of this case?
"A. No.
"Q. Haven't you sued N.Q. Adams —
"MR. GALANOS[1] [district attorney]: Wait a minute.
"MR. BRUTKIEWICZ: Let me finish my question.
 "Q. [Defense counsel lists the members of the school board]?
 "THE COURT: I sustain the objection. It has nothing to do with this case.
 "MR. GALANOS: And we would also ask the Court to admonish counsel to refrain from doing that which he knows is improper.
 "MR. BRUTKIEWICZ: Judge, it is always proper to show prejudice and bias and when somebody is —
 "THE COURT: You asked her did she expect to receive any money out of this case and I don't know how she could have asked that question (sic), but the answer was no and I see no reason to go into this other, but you have your objection in the record.
 "MR. BRUTKIEWICZ: May I make a proffer for the Court for the record?
"THE COURT: You've already done that.
 "MR. BRUTKIEWICZ: I have another proffer to make." R. 115-16.
Defense counsel then introduced a copy of a civil complaint filed by the victim against the appellant, the commissioner and the members of the Mobile County Board of School Commissioners, and various other persons.
 "THE COURT: The objection has to do with whether the fact that she has filed a civil suit, whether that would in any way, — number one, has anything to do with this case and his objection, I take it to mean that her testimony would be biased and prejudiced in this suit as a result of if there's no conviction then there would be nothing to sue these hundred people they've named here, and I'm being a little facetious, but, by gosh, not too much.
"MR. BRUTKIEWICZ: May I make my offer now Judge?
 "THE COURT: I want to get some correct number in there. . . . . [The trial judge determines that the appellant is suing 15 persons].
 "MR. BRUTKIEWICZ: I asked the lady whether or not she expected to make any money from this — I may have said case. Should have said incident. Nevertheless, she said no. I think I have a right to impeach her with a copy of a complaint and summons and an amended complaint where it shows at least her attorney, and I assume she hired him,. . . . I believe I'm entitled to impeach her with that, to show bias and prejudice, particularly, Judge, after she said she's not seeking any money.
 "THE COURT: No, she said in this case. That's the way you phrased the question. *Page 741 
 "MR. BRUTKIEWICZ: Well, it's a matter of semantics, I submit to you.
". . . .
"THE COURT: Your answer, Mr. Galanos.
 "MR. GALANOS: That the pending civil suit is neither relevant nor material to these proceedings. Secondly, it is not a proper means of showing bias in a criminal case, and I didn't cite a case because I didn't know this was coming, but you cannot, as I understand the case law —
 "THE COURT: I don't think you can either. You got something to the contrary?
"MR. BRUTKIEWICZ: I stand on my proffer, Judge.
 "THE COURT: I don't understand you. You have McElroy's out there. Don't you want to enlighten me with whatever you've got.
 "MR. BRUTKIEWICZ: I don't have it turned — no, sir, Judge. I'll tell you right now I don't have a case to cite for you. I've got McElroy's open. I'm using McElroy's for some other problems I'm going to have with the District Attorney's office.
 "THE COURT: Well, let's get them while the jury's out now.
 "MR. GALANOS: Just one other thing. Since the Court, as I understand it, has ruled that the civil suit can't come in, we would now orally move in limine that for the duration of these proceedings —
"THE COURT: I grant it.
 "MR. GALANOS: That he cannot mention it, either directly or indirectly, either through questions, argument or make any reference of any kind to any pending civil suit. That's what we ask you to order him to do.
"THE COURT: And I grant it and you're so ordered.
 "MR. BRUTKIEWICZ: That includes up to and not limited to recalling witnesses and rephrasing questions, I assume, Judge; is that correct?
 "THE COURT: As to anything at all to do with that civil case, period.
"MR. BRUTKIEWICZ: Yes, sir.
 "THE COURT: All, in toto. If I can make it any larger than that, I'll be happy to do so." R. 118-21.
Although there may not have been any error in the trial court's sustaining the objection to the particular question asked by defense counsel of the victim concerning whether she expected to get any money out of this "case," the trial court's ruling that defense counsel could not mention the pending civil case constitutes reversible error. While the objection was not stated as clearly as it could have been, we are convinced that the trial court understood the nature and substance of that objection.
 "The case law of this state has consistently held the institution of a civil suit arising out of the same facts as a criminal prosecution to be within the permissible scope of cross-examination to show bias on the part of the witness. This rule is augmented by the public policy of this state as codified in § 12-21-137, Code 1975, which mandates the right of every party to a 'thorough and sifting' cross-examination of the opponent's witnesses. Riley v. City of Huntsville, 379 So.2d 557 (Ala. 1980).
 "The general rule . . . is stated in Green v. State, 258 Ala. 471, 64 So.2d 84 (1953):
 "It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony.
 "See also, Morrison v. State, 267 Ala. 1, 100 So.2d 744 (1957).
 "In the discharge of its fact finding functions the jury's search for truth includes the paramount right to consider a witness's motivation, and any evidence testing 'his interest, bias or prejudice' so as to 'illustrate or impeach the accuracy of his testimony' is a competent, material and relevant subject of cross-examination, and the jury's right to be given such evidence is, of itself, part of the fact finding process. Green v. State, supra."
Ex parte Brooks, 393 So.2d 486, 487-88 (Ala. 1980). See also C. Gamble, McElroy's *Page 742 Alabama Evidence § 149.01(10) (4th ed. 1991), and cases cited therein; Annot., 98 A.L.R.3d 1060 (1980).
 III.
This Court declines to address the appellant's arguments that the trial court erred 1) in denying his motion for the discovery of the DNA evidence, and 2) in the admission of the DNA test results. On retrial, those issues will be governed byEx parte Perry, 586 So.2d 242, 255 (Ala. 1991).
This Court also notes that the issue of the prosecution's impeachment of its own witness, James Alexander, presents a serious question, see McElroy's at § 165.01(6); see also Thomasv. State, 461 So.2d 16 (Ala. 1984); as does the issue of defense counsel's failure to preserve any alleged error in the admission of the DNA test results.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] This Court has received information that District Attorney Galanos was not involved in the trial of this case, and that the entire case was prosecuted by Assistant District Attorney Thomas Harrison alone. However, Mr. Galanos's name does appear in the record as quoted throughout this opinion.