STATE of Arkansas *v.* Deon Cortez SHEARD, et al.

CR 93-699                                        870 S.W.2d 212

Supreme Court of Arkansas
Opinion delivered February 7, 1994
[Rehearing denied March 14, 1994.*]

---

*Newbern, J., would grant rehearing. Corbin, J., not participating.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellant.

*James P. Massie*, for appellees Robinson and Thompson.

*Lea Ellen Fowler O'Kelly*, for appellee Sheard.

*Nancie M. Givens*, for appellee Alexander.

*Phillip M. Henry*, for appellee Turner.

*Thomas B. Devine, III*, for appellee Hughes.

*Herbert T. Wright, Jr.*, for appellee Washington.

*Hugh Finklestein*, for appellee Bryant.

TOM GLAZE, Justice. The state brings this interlocutory appeal under the Rape-Shield Statute, Ark. Code Ann. § 16-42-101(c)(3)(b) (Supp. 1993), from the trial court's pretrial order to allow the defendants-appellees to introduce evidence at trial of an alleged rape victim's prior sexual conduct. Ark. Code Ann. § 16-42-101 (Supp. 1993); Ark. Sup. Ct. R. 1-2(a)(12) and Ark. R. Crim. P. 36.10. Specifically, the state jointly charged ten defendants with the rape of T.W., a fifteen-year-old female, on October 14, 1992.[1] Some of the defendants subsequently filed motions asserting T.W.'s prior sexual conduct is relevant to the charges pending against them and requesting the trial court to hold an omnibus hearing to determine the admissibility of such prior conduct. The trial court held two hearings on the defendants' motions. Afterwards, the trial court ordered that the defendants may offer at trial testimony and evidence concerning "the Woodland Ridge episode" involving sexual contact and activities of T.W. and defendants Deon Sheard, Tim Bryant, Larry Turner and Shawn Robinson that occurred months prior to the alleged rape incident on October 14th.

Sheard, Bryant and Robinson testified at one of the omnibus hearings and portrayed T.W. as one who had an ongoing consensual sexual relationship with Sheard, who was her boyfriend. Sheard said that he lived with his brother, Bryant, who had seen Sheard and T.W. having sex, but that Bryant never came in the

---

[1]The state subsequently dismissed charges against two of these defendants.

room to watch. Sheard also related that Robinson, Larry Turner and Cedrick Reaves were present in the home when Sheard had sex with T.W., but again these young men were never in the room. Sheard also related that, on one occasion at Woodland Ridge sometime in the summer of 1992, T.W. had consensual sex with Turner on the same day she had had sex with Sheard, but that Turner and T.W. were in a private room. Sheard conceded that he had never seen T.W. have sex with any of the other defendants in the case. On another occasion at T.W.'s house, Sheard paid T.W.'s cousin a few dollars to watch out for T.W.'s mother so Sheard and T.W. would not get caught having sex. Finally, Sheard testified that he had never inserted foreign objects in T. W.'s vagina in these prior sexual encounters, and he had never undressed her.

Shawn Robinson testified that he, Turner and Reaves looked under a door to the room where Sheard and T.W. were having sex, and that they "busted" in the room. He also testified that he had peeked under the door on one occasion when Sheard was with T.W. and Sheard asked Robinson to close the door. On each of the two occasions when Robinson saw Sheard and T.W. together, Robinson said they were in a room with the door closed. Robinson also stated that by looking under a door, he had seen T.W. having consensual sex with Turner.

Bryant also testified, stating that he had seen Sheard and T.W. having sex on two occasions by looking under the door to the room where Sheard and T.W. were together. Bryant said that, while he admitted having sex with T.W. on the date of the alleged rape incident, he had never before had sex with T.W.

From the foregoing, the trial court remarked that the issue in this case bears on whether T.W. consented to the sexual acts occurring on October 14, 1992. It then ruled that the evidence of what occurred during the prior summer at Woodland Ridge was relevant and also that sexual contact and activities between T.W. and Sheard, regardless of time or place, were relevant and could be offered by the defendants. In sum, under the trial court's ruling, all of the testimony given by Sheard, Bryant and Robinson would be admissible at the defendants' trial.

In *Marion* v. *State*, 267 Ark. 345, 590 S.W.2d 288

(1979), the court summarized Arkansas's Rape-Shield Statute by saying the statute provides that evidence of a victim's prior sexual conduct is inadmissible at trial except where the court, at an in camera hearing, makes a written determination that it is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. *See specifically* Ark. Code Ann. § 16-42-101(c) (Supp. 1993). The purpose of such hearing is to review the evidence to determine whether it is relevant for trial purposes. *Id.* This court will reverse a trial court's ruling on whether or not such evidence is relevant if that decision is clearly erroneous. *Gaines* v. *State*, 313 Ark. 561, 855 S.W.2d 956 (1992); *Houston* v. *State*, 266 Ark. 257, 582 S.W.2d 958 (1979).

This court has held that prior acts of sexual conduct are not within themselves evidence of consent in a subsequent sexual act. *Sterling* v. *State*, 267 Ark. 208, 590 S.W.2d 254 (1979). There must be some additional evidence connecting such prior acts to the alleged consent in the present case before the prior acts become relevant. *Id.* This court has also repeatedly said that Arkansas's Rape-Shield Statute is intended to protect victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Gaines*, 313 Ark. 561, 855 S.W.2d 956.

Here, we simply fail to see how T.W.'s prior sexual conduct, as related by the three defendants in the omnibus hearing, bears on or relates to whether she consented to a group-sex situation involving young men who held her legs and had their way with her. Whether T.W. had a prior and regular consensual sexual relationship with Sheard in no way indicates she would agree to group sex. Nothing in the testimony given by Sheard, Bryant and Robinson revealed that T.W. was ever willing to have sex with another person while others joined in. Except for one instance, the prior sexual activities of T.W. involved her relationship with Sheard in a room with the door closed. Although other young men (now defendants) peered under and through the door, on one or two occasions, such a situation is not even similar to the group-sex incident on October 14, 1992, with which these defendants were charged. While the trial court in its ruling specifically alluded to the "Woodland Ridge episode" where T.W. purportedly had sex with Sheard and later Turner on the

same day, Sheard's own testimony reflects that T.W. and Turner were in the privacy of a room and that one should not make the situation "sound like somebody is sick or something . . . . Nobody's no pervert."

The trial court (and dissenting opinion) relied on the case of *Bobo* v. *State*, 267 Ark. 1, 289 S.W.2d 5 (1979), as support for admitting into evidence prior sexual conduct between a defendant and an alleged rape victim when consent is an issue. That case (and *Brown* v. *State*, 264 Ark. 944, 581 S.W.2d 549 (1979), cited therein) differs substantially from the one before us now — there, group sex involving multiple parties was not involved. In sum, we conclude that whether a victim may have consented to prior normal, individual sexual relations with a defendant is simply not relevant to the situation alleged here, where the defendants assert T.W. consented to being restrained and subjected to sexual intercourse and conduct by multiple parties. *Cf. People* v. *Williams*, 416 Mich. 25, 330 N.W.2d 823 (1982); *Interest of Nichols*, 2 Kan. App. 2d 431, 580 P.2d 1370 (1978). Thus, we reverse and remand the trial court's ruling to the contrary.

NEWBERN, J., dissents.

DAVID NEWBERN, Justice, dissenting. The State of Arkansas appeals a pre-trial ruling from the Trial Court. The ruling followed a hearing pursuant to Ark. Code Ann. § 16-42-101 (Supp. 1993), the "rape shield" statute, and would allow Deon Sheard and the other defendants to present evidence concerning the prosecuting witness's prior sexual activity at each of their rape trials.

The defendants moved for a hearing, pursuant to § 16-42-101, to determine the admissibility of testimony concerning the alleged victim's prior sexual activity. The defendants contend the alleged victim's prior conduct is relevant to each of their defenses and should be admissible.

According to the representation of a deputy prosecutor made at the hearing, the State plans to prove that Deon Sheard told other members of a gang, the "43rd Storm," that the alleged victim wanted to be a member. A female who wishes to become a member must engage in sexual intercourse with the male members. The proof, according to the deputy prosecutor, will show that the alleged victim objected to intercourse and the gang mem-

bers, including those charged with Mr. Sheard, forced themselves upon her.

Two defendants, Mr. Sheard and Tim Bryant (Mr. Sheard's brother), and a witness, Shawn Robinson, testified. Mr. Sheard testified at length about his relationship with the alleged victim. This relationship, initiated by the alleged victim, started in the summer of 1991, and included substantial sexual activity. It occurred often when she would come to his house in the morning before school. She frequently called and invited him to her house as well. Mr. Sheard testified that he never initiated sexual relations with the alleged victim.

Mr. Sheard also testified about two incidents referred to as the "Huntington" incident and the "Woodland Ridge" incident. The Huntington incident took place at the alleged victim's apartment. Mr. Sheard and Shawn Robinson arrived at the apartment, and Mr. Sheard and the victim engaged in intercourse while Mr. Robinson was in another room.

The Woodland Ridge incident occurred in the summer of 1992. Shawn Robinson, and defendants Larry Turner, Tim Bryant, Deon Sheard and "a few other people," drove to the alleged victim's apartment. Mr. Sheard and the alleged victim engaged in intercourse, and shortly afterwards Larry Turner engaged in intercourse with her. According to Mr. Sheard, the alleged victim consented to each act.

Shawn Robinson testified that he watched Mr. Sheard and the alleged victim in the act of intercourse twice. Both times were in her apartment, the second time was the Huntington incident. The first time, Mr. Robinson testified he watched by looking under the bedroom door. He agreed that neither Mr. Sheard nor the alleged victim was aware of his presence.

Mr. Robinson testified that during the Huntington incident he and Larry Turner and Tim Bryant "busted in" the bedroom while Mr. Sheard and the victim were engaged in sexual intercourse. He stated the alleged victim saw them in the room and, when asked what the alleged victim did when she saw them, "She didn't do nothing." Mr. Robinson again "busted in" the bedroom when Mr. Turner and the alleged victim appeared to be engaged in sexual intercourse. He testified the alleged victim did not

appear to be struggling. He was asked, "Did she say anything?" and his response was "No." He was asked, "But she didn't say, no, Larry, or anything like that?" and he answered, "No, ma'am."

Tim Bryant's testimony was substantially the same and corroborated the testimony of Mr. Robinson and Mr. Sheard.

The Trial Court ruled that it would allow, at each of the defendants' trials, testimony concerning the Woodland Ridge incident, and testimony concerning the victim's prior relationship with Deon Sheard, but not the Huntington incident.

It is from this order that the State appeals.

### 1. The statute

The Trial Court based its ruling on § 16-42-101 (Supp. 1993). The statute provides, in pertinent part, that any "opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person is not admissible . . . to attack the credibility of the victim, to prove consent . . . or for any other purpose." § 16-42-101(b).

The statute further provides that a defendant may request a pre-trial hearing to determine the admissibility of such evidence, and "evidence directly pertaining . . . [to] the victim's prior sexual conduct with the defendant or any other person may be admitted . . . if the court determines that the offered proof is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature . . . ." § 16-42-101(c).

The statute is designed to prevent the defendant's trial from becoming an unnecessarily humiliating exhibition of an alleged victim's private life. Its purpose is to encourage rape victims to prosecute their attackers by "shielding" them from humiliation. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980); *Duncan* v. *State*, 263 Ark. 242, 565 S.W.2d 1 (1978). This purpose is achieved by requiring a pre-trial hearing, which allows the Trial Court to weigh the proffered testimony of a defendant before it is presented to a jury. In making its determination, the Trial Court is given wide latitude, and will not be reversed absent an abuse of discretion. *Logan* v. *State*, 300 Ark. 35, 776 S.W.2d 341 (1989); *Lackey* v. *State*, 288 Ark. 225, 703 S.W.2d 858 (1986); *Kemp* v. *State*, 270 Ark. 835, 606 S.W.2d 573 (1980).

## 2. *Abuse of discretion*

In *Bobo* v. *State*, 267 Ark. 1, 289 S.W.2d 5 (1979), there were allegations of rape against Mr. Bobo and Mr. Forrest. The Trial Court held a hearing to consider whether prior sexual relations between the two defendants and the alleged victim could be admitted as well as evidence of sexual relations between the alleged victim and other persons including a Mr. Duckworth. The Trial Court ruled that the evidence of the relations between the alleged victim and the defendants would be admissible on the issue of consent. He also ruled that evidence that Mr. Duckworth had engaged in sexual intercourse with the alleged victim just prior to the alleged act of rape by the defendants was admissible. The two defendants appealed, contending that the Trial Court should also have ruled admissible prior incidents involving the alleged victim and Mr. Duckworth as well as others and a nude photograph of the alleged victim which had appeared in a magazine.

We affirmed the Trial Court's ruling in the *Bobo* case. In an *obiter dictum* we remarked that the Trial Court had properly ruled that the alleged victim could be examined about her prior sexual relations with the two defendants, citing *Brown* v. *State*, 264 Ark. 944, 581 S.W.2d 549 (1979). In the *Brown* case we reversed a trial court's refusal to permit testimony about prior sexual relations between the alleged victim and the accused on the issue of consent.

In the case now before us, the Trial Court reviewed the evidence and, comparing the ruling we approved in the *Bobo* case, came to the conclusion that evidence of Mr. Sheard's prior sexual relationship with the alleged victim, which the State apparently agreed would not be objectionable evidence, should be admitted as well as evidence of the Woodland Ridge incident. He excluded evidence of the Huntington incident.

The Trial Court remarked on the difficulty of the decision, given the obvious potential of the evidence to embarrass and humiliate the alleged victim juxtaposed to the seriousness of the offenses charged against the defendants and the relevancy of the alleged victim's prior sexual conduct to the charges.

It seems clear to me that the evidence that this alleged vic-

tim had engaged in sexual intercourse with Mr. Sheard and others of the defendants in circumstances which could be described as less than discrete and private is relevant to the question whether she consented to the acts charged against these defendants. The Trial Court decided that the prejudicial nature of the evidence, which he so clearly recognized, was outweighed by its probative value. There is no clear right or wrong in such a decision, yet the majority opinion holds the Trial Court's decision was "clearly erroneous." That is the standard of review to which we adverted most recently in *Gaines* v. *State*, 313 Ark. 561, 855 S.W.2d 956 (1992), where we said, "The trial court is vested with a great deal of discretion in ruling whether prior sexual conduct of a prosecuting witness is relevant, and we do not overturn its decision unless it was clearly erroneous."

The acts the State has alleged are indeed abhorrent to every member of this Court, but it must be remembered that at this point they are only allegations. The premise of the majority opinion is that evidence of the alleged victim's prior indiscretions could not be relevant in a trial where the State will attempt to show that brutal force was used. Again, it must be remembered we are dealing with allegations only, and some of the defendants are alleging that the sexual intercourse which occurred on the day of the alleged rape was consensual.

The purpose of the rape shield law is salutary, but the General Assembly recognized that a balance must be achieved between protecting an alleged victim of rape from unnecessary exposition of humiliating evidence and depriving a jury of information which is relevant to whether the alleged victim consented to the sexual conduct alleged. The balance must be struck by the judge who hears the evidence and sees the witnesses at the hearing designed for that purpose. Whether the standard of review is that we will not reverse unless the decision is clearly erroneous or constitutes an abuse of discretion, the threshold is high. I do not see how this Court can come to the conclusion that the decision is an abuse of discretion, and it is even harder for me to understand how the Trial Court's decision can be characterized as clearly erroneous.

I respectfully dissent.